http://www.va.gov/vetapp16/Files4/1630395.txt

Citation Nr: 1630395 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 14-08 051 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Jackson, Mississippi

THE ISSUES

1. Entitlement to an evaluation in excess of 10 percent bilateral hernia disability and post-surgical residuals.

2. Entitlement to an initial evaluation in excess of 10 percent for ilioinguinal neuropathy with complex regional pain syndrome.

3. Entitlement to a separate compensable rating for scars due to bilateral hernia surgery. 

REPRESENTATION

Appellant represented by: Mississippi State Veterans Affairs Board

WITNESS AT HEARING ON APPEAL

Veteran and spouse

ATTORNEY FOR THE BOARD

H. Hoeft

INTRODUCTION

The Veteran served on active duty from April 1956 to May 1957.

These matters come before the Board of Veterans' Appeals (Board) on appeal from a February 2012 rating decision rendered by the Department of Veterans Affairs (VA) Regional Office (RO) Tiger Team in Cleveland, Ohio, which increased the rating for the hernia disability from 0 percent to 10 percent disabling, effective May 4, 2010. Due to the location of the Veteran's residence, the jurisdiction of his appeal remains with the RO in Mississippi. 

During the course of the appeal, the RO also granted service connection for ilioinguinal neuropathy with complex regional pain syndrome as related to the service-connected disability of residual scar, bilateral hernioplasty. See November 2014 Rating Decision. The RO assigned a 10 percent disability rating, effective from June 10, 2014. Although, the Veteran did not file a Notice of Disagreement with respect to this claim, it is part and parcel of the increased rating claim for residuals of a bilateral hernioplasty and is therefore considered to be on appeal. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

The Veteran and his spouse testified before a Decision Review Officer (DRO) in May 2013. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

FINDINGS OF FACT

1. The Veteran's postoperative right hernia is recurrent, small, readily reducible, and well supported by a truss or belt; a left recurrent hernia has not been shown by the medical record during the appeal period. 

2. The Veteran's ilioinguinal nerve damage as a residual of bilateral hernia surgeries is manifested through recurrent pain which results in incomplete nerve paralysis that is no more than mild on the left and severe on the right. 

3. For the entire initial rating period, the scars due to bilateral hernia surgery have been manifested by pain. 

CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 10 percent for post-surgical residuals of bilateral hernia surgery have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.114, Diagnostic Code (DC) 7338 (2015).

2. The criteria for an initial disability rating in excess of 10 percent for ilioinguinal neuropathy with complex regional pain syndrome associated with post-surgical residuals from bilateral hernia operations have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.20, 4.124a, Diagnostic Code 8630 (2015).

3. Resolving reasonable doubt in favor of the Veteran, the criteria for an initial rating of 10 percent, but no higher, for scarring from bilateral hernia surgeries have been met or more nearly approximated for the entire initial rating period. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 4.3, 4.7, 4.118, Diagnostic Code 7804 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

Upon receipt of a substantially complete application, VA must notify the claimant and any representative of any information, medical evidence, or lay evidence not previously provided to VA that is necessary to substantiate the claim. The notice must: (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence the claimant is expected to provide. 38 U.S.C.A. §§ 5103, 5103A, 5107 (West 2014); 38 C.F.R. § 3.159 (2015); Pelegrini v. Principi, 18 Vet. App. 112 (2004). If VA does not provide adequate notice of any element necessary to substantiate the claim, or there is any deficiency in the timing of the notice, the burden is on the claimant to show that prejudice resulted from a notice error. See Shinseki v. Sanders, 556 U.S. 396 (2009). 

The Board finds that the Veteran was provided thorough and informative notices and had a meaningful opportunity to participate effectively in the processing of the claim with an adjudication of the claim by the RO subsequent to receipt of the required notice. Specifically, the Veteran was notified in a letter dated in November 2011. Moreover, the Veteran has neither alleged nor demonstrated any prejudice with regard to the content or timing of the notice provided. See Shinseki, supra (burden of showing that an error is harmful or prejudicial falls on party attacking agency decision); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). 

The Board also finds that the duty to assist has been met. All relevant, identified, and available evidence has been obtained, and VA has notified the appellant of any evidence that could not be obtained. The Veteran has not referred to any additional, unobtained, relevant, available evidence. VA conducted examinations in 2011, 2013, and 2014 with a physical examination of the Veteran and consideration of the applicable rating criteria, and the Board finds that these examinations are adequate for adjudication purposes.

Thus, the Board finds that VA has satisfied the duty to assist provisions of law. No further notice or assistance to the Veteran is required to fulfill VA's duty to assist him in development. Smith v. Gober, 14 Vet. App. 227 (2000); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); Quartuccio v. Principi, 16 Vet. App. 183 (2002).

Increased rating claims

Disability ratings are determined by applying the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2015). The basis of disability ratings is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10 (2015). After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3 (2015). 

The Board will consider entitlement to staged ratings to compensate for times since filing the claim when the disability may have been more severe than at other times during the course of the claim on appeal. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

In determining the severity of a disability, the Board is required to consider the potential application of other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, and the entire history of the Veteran's disability. 38 C.F.R. § 4.1 (2015); Schafrath v. Derwinski, 1 Vet. App. 589 (1995). If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned. Otherwise, the lower rating is assigned. 38 C.F.R. § 4.7 (2015). It is not expected that all cases will show all the findings specified. However, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21 (2015).

Bilateral hernia disability and post-surgical residuals; scars; and ilioinguinal neuropathy with complex regional pain syndrome.

The Veteran underwent bilateral hernia surgeries in service. A March 1958 rating decision granted service connection and assigned a noncompensable rating for the post-surgical residuals of his bilateral hernia operation. 

In May 2010, the Veteran filed a claim for an increased rating for hernia residuals. In February 2012, the AOJ granted an increased rating of 10 percent for post-operative hernia residuals (previously characterized as of residual scar, bilateral hernioplasty), effective May 4, 2010. The Veteran timely appealed that determination. In a November 2014 rating decision, the AOJ granted a separate, 10 percent evaluation for residual ilioinguinal neuropathy with complex regional pain syndrome. 

In a December 2011 statement, the Veteran endorsed hernia-related symptomatology, including pain in lower stomach and groin area, pain when coughing, urinating, and passing stool, bulging out of the groin, abdominal swelling, nausea, and vomiting. 

The Veteran underwent a VA examination in December 2011. At that time, the Veteran reported that he wore a padded belt to reduce the hernia and that he noticed mild discomfort in the area of the hernia on a daily basis. Objectively, a right inguinal hernia was present on examination; no hernia was detected on the left. The right hernia was described as "small" and readily reducible. The right hernia was well-supported by a belt or truss. The right recurrent hernia was noted as operable and remediable. The Veteran's scars were not described as painful or unstable and the total area of the scars was not greater than 39 square centimeters. No other scar-related symptoms were described. 

The Veteran underwent another VA examination in November 2013. At that time, he reported that he was still in pain and wore his truss for support. On examination, there was a small right hernia; no left hernia was detected. The right recurrent hernia was readily reducible. There was no level of severity requiring surgery. The Veteran's scars were not described as painful or unstable and the total area of the scars was not greater than 39 square centimeters. No other scar-related symptoms were described. The examiner opined that there was no further worsening of symptoms since the December 2011 VA examination. 

A June 2014 private treatment reports reflects a diagnosis of right inguinal hernia with neuropathy. 

The Veteran underwent a VA scar examination in July 2014. At that time, he reported that his surgical scars were tender. When asked to describe characteristics and location of the pain, he stated that the pain was constant and sharp and that it radiated to his groin/rectal areas. Objectively, none of the scars were painful, unstable, non-linear, or resulted in limitation of motion. The scars were described as measuring 9cm x .001cm. In the "remarks" section of the examination, the examiner stated that the scars were superficial, well healed, normal pigmented, smooth, flat, and stable without adherence to underlying tissue. The texture of the scars was normal with that of the surrounding skin. The Veteran denied pain of the scars. There was no muscle, chronic skin change associated, or disfigurement associated with the scars. 

The Veteran also underwent a VA hernia examination in July 2014. At that time, he denied any change in treatment, history, or condition of his bilateral hernia since the last VA examination. He stated that he continued to experience pain - not in his sites of surgery but in the groin and rectal area. It was noted that he was status post brachytherapy in 2008 for prostate cancer. He denied any recurrence of the hernia but endorsed residual tenderness of the scars. Objectively, a small right hernia was detected on examination; no left hernia was found. The right hernia was readily reducible and supported by a belt or truss. The examiner noted that the Veteran denied any pain on examination of the hernia. The Veteran's scars were not described as painful or unstable and the total area of the scars was not greater than 39 square centimeters. No other scar-related symptoms were described. 

In a September 2014 statement, the Veteran took issue with the July 2014 VA examiner's finding that there was no objective evidence of painful or tender scars. He stated, "I don't know where that information came from: my scars are very tender and painful...a lot of mornings I don't even feel like getting out of bed." He denied ever saying that the scars were not painful. 

The Veteran underwent a VA neurology examination in October 2014. At that time, the Veteran reported constant soreness in the groin area (R>L). He stated that he felt "like there's something moving in there." There was numbness at times. Objectively, sensory was intact to fine touch; temperature sense was decreased in the right groin about the area of the herniorrhaphy scar and medially to midline, and on the left confined to the area of the scar; there was hyperpathia and allodynia to pin prick sensation in the right groin area and about the left scar. Deep tendon reflexes were hypoactive (+1). There was moderate, incomplete paralysis of the right ilio-inguinal nerve, and mild, incomplete paralysis of the left ilio-inguinal nerve. The examiner concluded that there was clinical evidence for a right ilioinguinal neuropathy, likely related to his herniorrhaphy, with at least mild complex regional pain syndrome type II evidenced by hyperpathia and allodynia. Sensory loss on the left was more restricted to the area of the surgical scar. 

Analysis- post-operative hernia residuals

Based upon review of the evidence of record, the Board finds that an increased rating is not warranted for the Veteran's post-surgical hernia disability. 

The Veteran is in receipt of a 10 percent rating for post-surgical residuals of bilateral hernia repair under 38 C.F.R. § 4.114, Diagnostic Code 7338. A 10 percent rating is warranted where the inguinal hernia is postoperative recurrent, readily reducible, and well supported by truss or belt. The next higher rating of 30 percent is warranted for a small hernia which is postoperative and recurrent, or unoperated irremediable, and not well supported by a truss, or not readily reducible. Note: Add 10 percent for bilateral involvement, provided the second hernia is compensable. See 38 C.F.R. § 4.114, Diagnostic Code 7338.

The evidence outlined above shows that the Veteran's postoperative right hernia is recurrent, small, readily reducible, and well supported by a truss or belt. See 2011, 2013, and 2014 VA Examination Reports. None of the evidence of record has indicated that the Veteran's right hernia is not well supported by truss, or not readily reducible so as to warrant the next-higher 30 percent rating under Diagnostic Code 7338. 

With respect to the post-operative left hernia condition, no left hernia, recurrent or otherwise, has been detected on examination at any point during the course of this appeal. Such findings are commensurate with a non-compensable rating. As such, an additional 10 percent rating for bilateral involvement under Diagnostic Code 7338 (see Note) is not warranted in this case.

The Board acknowledges the Veteran's assertions concerning the symptomatology and severity of his bilateral hernia disability. For example, during his DRO hearing he reported that the hernia residuals consisted of pain, tenderness, problems sleeping, and that the pain could reach an 8 out of 10 on the pain scale. See also December 2011 statement from Veteran (endorsing lower stomach and groin area, pain when coughing, urinating, and passing stool). The Veteran is competent to report symptoms because this requires only personal knowledge as it comes to him through his senses. Layno v. Brown, 6 Vet. App. 465 (1994). He is not, however, competent to identify a specific level of disability of his disability according to the appropriate diagnostic codes. 

On the other hand, such competent evidence concerning the nature and extent of the Veteran's bilateral hernia disability has been provided by the medical personnel who have examined him during the current appeal and who have rendered pertinent opinions in conjunction with the evaluations. The medical findings (as provided in the examination reports and clinical records) directly address the criteria under which this disability is evaluated. Here, the clinical evidence pertaining to the Veteran's bilateral hernia disability is more probative for the purposes of assigning a rating in conjunction with the relevant rating criteria, and the Board finds that the pain and functional impairment reported has been appropriately considered in the currently assigned 10 percent rating in effect during the appeal period. Significantly, the 2013 VA examiner opined that that there was no further worsening of symptoms since the December 2011 VA examination, while the Veteran himself reported no significant changes in his hernia disability at the 2014 VA examination. 

The Board has considered whether a higher ratings could be assigned under different diagnostic codes, but finds that such is not appropriate in this case.

In light of the above, the claim for a rating in excess of 10 percent for the Veteran's post-operative bilateral hernia disability must be denied. In reaching this decision, the Board finds that the preponderance of the evidence is against the claim, and the claim must be denied. 38 U.S.C.A. § 5107(b)(West 2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Analysis - scars, hernia surgery

The Board has also considered whether a separate compensable rating is warranted for the Veteran's surgical scars. As demonstrated by the evidence outlined above, the Veteran has consistently and competently described his left and right residual hernia surgery scars as painful and tender. 

The Veteran's scars are not on the head, face, or neck, and are not a burn scar or a scar that is nonlinear. Therefore, DC 7800, 7801, and 7802 are not appropriate to rate the Veteran's hernia repair scars. The DC that most accurately describes the Veteran's disability is DC 7804, which relates to unstable or painful scars. 38 C.F.R. § 4.118. 

Under DC 7804, a 10 percent rating is warranted for one or two scars that are unstable or painful. 38 C.F.R. § 4.118, DC 7804. A 20 percent rating is warranted when there are three or four scars that are unstable or painful. Id. A 30 percent evaluation is assigned when there are five or more scars that are unstable or painful. Id. Note (1) indicates that an unstable scar is one where, for any reason, there is frequent loss of covering of skin over the scar. Id. Note (2) provides that if one or more scars are both unstable and painful, add 10 percent to the evaluation that is based on the total number of unstable or painful scars. 38 C.F.R. § 4.118, DC 7804. 

Under DC 7805, for rating other scars (including linear scars) and other effects of scars evaluated under DC's 7800, 7801, 7802 and 7804, any disabling effect(s) not considered in a rating provided under DC's 7800 -04 are evaluated under an appropriate diagnostic code of the Rating Schedule. 38 C.F.R. § 4.118, DC 7805.

In this case, the Veteran is competent to report the symptoms of pain and tenderness. See Layno, supra. The Board finds no reason to doubt the credibility of such statements as they have been consistently reported throughout the record. The Veteran's numerous lay statements that his scars are tender and painful to touch are at odds with the VA examination reports that the scars are not tender or painful to the touch. Allowing the Veteran the benefit of the doubt, the Board finds that it is at least as likely as not that the Veteran's scars are painful. Gilbert, supra. 

The Board finds that the Veteran has two painful scars, which warrant a 10 percent rating under DC 7804. A rating of 20 percent is available for three or four scars that are unstable or painful. As only two surgical scars have been identified by the record, and as there is no indication the existing scars are unstable as well as painful, a rating in excess of 10 percent is not warranted. 38 C.F.R. § 4.118, DC 7804. Additionally, the scars have not been shown to result in any disabling effect not considered in DC 7804, so as to warrant an additional separate rating under a diagnostic code of the Rating Schedule. 38 C.F.R. § 4.118, DC 7805.

Resolving reasonable doubt in the Veteran's favor, the Board finds that a rating of 10 percent, but no higher, for painful, stable hernia repair scars is warranted. See 38 U.S.C.A. § 5107(b)(West 2014); 38 C.F.R. § 4.118, DC 7804; Gilbert, supra. 

Analysis -ilioinguinal neuropathy with complex regional pain syndrome

Finally, the Veteran is in receipt of a separate 10 percent rating for ilioinguinal neuropathy with complex regional pain syndrome associated with post-surgical residuals of a bilateral hernia under 38 C.F.R. § 4.124, Diagnostic Code 8630.

Under Diagnostic Code 8630, a noncompensable evaluation is assigned for mild to moderate paralysis of the ilioinguinal nerve, whereas a 10 percent evaluation is warranted for severe to complete paralysis of that nerve. See 38 C.F.R. § 4.124a, Diagnostic Code 8630 (2015).

Ilioinguinal neuritis characterized by loss of reflexes, muscle atrophy, sensory disturbances, and/or constant pain, at times excruciating, is to be evaluated on the scale provided for injury of the nerve involved, with a maximum equal to severe incomplete paralysis. The maximum evaluation which may be assigned for neuritis not characterized by organic changes is that provided for moderate incomplete paralysis. 38 C.F.R. §§ 4.123, 4.124a, Diagnostic Code 8630.

In this case, the Board acknowledges that the October 2014 VA examination shows decreased DTRs (+1) in the left lower extremity and sensory loss in the area of the left scar, but no other neurological abnormalities were present. At that time, the October 2014 VA expressly examiner stated that the Veteran's left ilioinguinal neuropathy was of "mild" severity (incomplete paralysis). There are no medical findings to the contrary. In order to assign a higher rating, the record must show severe to complete paralysis of the ilioinguinal nerve under Diagnostic Code 8630. (Emphasis added). 

The Veteran is competent to report symptoms he experiences, to include pain numbness in the left ilioinguinal area, and the Board finds him to be credible. See Layno, supra. However, his reports do not satisfy the schedular criteria for a separate compensable rating for left ilioinguinal neuropathy. There is simply no medical evidence in this case to support a finding of severe to complete paralysis of the left ilioinguinal nerve, even when considering the above-noted subjective complaints and objective findings of sensory loss and decreased DTRs. Accordingly, the Board finds that the preponderance of the evidence is against the claim for a compensable rating for left ilioinguinal neuropathy. 

With respect to right ilioinguinal neuropathy, the Veteran is already in receipt of the maximum schedular evaluation assignable for the disorder (i.e., 10 percent). See 38 C.F.R. § 4.124a, DC 8630. 

Despite the Veteran's general assertions concerning the severity of his right ilioinguinal disability, the Board notes that the October 2014 VA examination report outweighs the Veteran's contentions. The Veteran is competent to report symptoms; he is not, however, competent to identify a specific level of disability of his disability according to the appropriate diagnostic codes. Rather, such competent evidence concerning the nature and extent of the Veteran's ilioinguinal nerve damage disability has been provided by the medical personnel who have examined him during the current appeal and who have rendered pertinent opinions in conjunction with the evaluations. The medical findings (as provided in the examination reports and clinical records) directly address the criteria under which this disability is evaluated. Here, the clinical evidence pertaining to the Veteran's right ilioinguinal nerve damage is more probative for the purposes of assigning a rating in conjunction with the relevant rating criteria and the Board finds that the pain and functional impairment reported has been appropriately considered in the currently assigned noncompensable rating in effect during the appeal period. Significantly, the October 2014 examiner opined that the Veteran had only moderate incomplete paralysis of the ilioinguinal nerve (which is commensurate with a non-compensable rating under DC 8630). He was nevertheless assigned a rating approximating severe to complete paralysis of that nerve (i.e., 10 percent). 

The Board has carefully reviewed the rating schedule and finds no other diagnostic code that would provide a basis to grant a separate initial compensable rating for left ilioinguinal neuropathy, or an initial rating in excess of 10 percent for right ilioinguinal neuropathy. 

In light of the above, the claim for a rating in excess of 10 percent for the Veteran's ilioinguinal neuropathy must be denied. In reaching this decision, the Board finds that the preponderance of the evidence is against the claim, and the claim must be denied. 38 U.S.C.A. § 5107(b)(West 2014); Gilbert, supra. 

Extraschedular Consideration 

In general, the schedular disability evaluations are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. The application of such schedular criteria was discussed in great detail above. To accord justice in an exceptional case where the schedular standards are found to be inadequate, the RO is authorized to refer the case to the Chief Benefits Director or the Director, Compensation and Pension Service for assignment of an extraschedular evaluation commensurate with the average earning capacity impairment. 38 C.F.R. § 3.321(b)(1)).
In Thun v. Peake, 22 Vet. App. 111 (2008), the United States Court of Appeals for Veterans Claims clarified the analytical steps necessary to determine whether referral for extraschedular consideration is warranted. Either the RO or the Board must first determine whether the schedular rating criteria reasonably describe the veteran's disability level and symptomatology. Id. at 115. If the schedular rating criteria do reasonably describe the veteran's disability level and symptomatology, the assigned schedular evaluation is adequate, referral for extraschedular consideration is not required, and the analysis stops. If the RO or the Board finds that the schedular evaluation does not contemplate the veteran's level of disability and symptomatology, then either the RO or the Board must determine whether the veteran's exceptional disability picture includes other related factors such as marked interference with employment and frequent periods of hospitalization. Id. at 116. If this is the case, then the RO or the Board must refer the matter to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for the third step of the analysis, determining whether justice requires assignment of an extraschedular rating. Id. 

In this case, the hernia-related symptoms described by the Veteran fit squarely with the criteria found in the relevant Diagnostic Codes for the disabilities at issue. In short, the rating criteria contemplate not only his post-surgical hernia, scar, and neuropathy symptoms, but the severity of his disabilities. For these reasons, referral for extraschedular consideration is not warranted.

The Board notes that under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, after applying the benefit of the doubt under of Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions. 

Finally, a claim for a total rating based on individual unemployability due to service-connected disabilities (TDIU) is part of an increased rating issue when such claim is raised by the record. Rice v. Shinseki, 22 Vet. App. 447 (2009). As indicated above, the evidence associated with the record shows that the Veteran has reported that he is retired and his hernia disabilities do not significantly impact his employability. See July 2014 VA Examination Report. Therefore, the Board finds that a claim for a TDIU is not raised by the record.

ORDER

A rating in excess of 10 percent for post-operative hernia surgical residuals is denied. 

A rating in excess of 10 percent for ilioinguinal neuropathy with complex regional pain syndrome is denied. 

A separate 10 percent rating, but no higher, for hernia surgical scars is granted. 

____________________________________________
WAYNE M. BRAEUER 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs